IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>                                                       )<br>        Plaintiff,                           )<br>                                                       )<br>    v.                                              )<br>                                                       )<br>ANTHONY P. PURDY,                  )<br>                                                       )<br>        Defendant.                         )<br>                                                       ) | 8:05CR204<br><br>MEMORANDUM AND ORDER |

This matter is before the court on the defendant, Anthony P. Purdy's (Purdy), Motion to Proceed In Forma Pauperis (IFP) (Filing No. 95), Motion to Vacate and Dismiss with Prejudice Pursuant to 28 U.S.C. § 2255 (Filing No. 99), and Motion for Judgment on the Pleadings (Filing No. 112).  Purdy filed a brief (Filing No. 100) and an affidavit (Filing No. 101) in support of the Motion to Vacate.  The government filed an answer (Filing No. 109), a brief (Filing No. 110), and index (Filing No. 111) in opposition to Purdy's Motion to Vacate.

### PROCEDURAL AND FACTUAL BACKGROUND

On May 19, 2005, a one-count Indictment was filed charging Purdy with being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1) (Filing No. 1).  On June 6, 2005, Purdy appeared before Magistrate Judge Thomas D. Thalken and entered a plea of not guilty (Filing No. 4, Minute Entry). Purdy was detained pending trial (Filing No. 9).

On June 14, 2005, Assistant Federal Public Defender Shannon P. O'Connor (O'Connor), filed his Notice of Appearance (Filing No. 10).  On July 22, 2005, Purdy filed a Motion to Suppress and Request for Evidentiary Hearing and supporting brief (Filing Nos.

14 and 15). An evidentiary hearing was held on August 9, 2005, before Magistrate Judge Thomas D. Thalken (Filing No. 31, Minute Entry). On August 17, 2005, Purdy filed a post-hearing supplemental brief in support of the motion to suppress (Filing No. 40). On October 12, 2005, Magistrate Judge Thomas D. Thalken issued a Report and Recommendation recommending denial of Purdy's motion to suppress. *See* Filing No. 46. Purdy objected to the Report and Recommendation on October 26, 2005. *See* Filing Nos. 48 and 49.

On December 19, 2005, this court entered a Memorandum and Order not adopting the Report and Recommendation and granting Purdy's Motion to Suppress (Filing No. 50). On December 22, 2005, Purdy filed a Motion for Reconsideration of Detention (Filing No. 52). On December 23, 2005, this court denied Purdy's motion following a hearing (Filing No. 54, Minute Entry). On December 29, 2005, the government filed an interlocutory appeal regarding the order granting Purdy's Motion to Suppress (Filing No. 56).

On January 19, 2006, Purdy filed another Motion to Review Detention, in which he requested permission to be released for a limited period of time in order to visit his ill grandfather (Filing No. 64). On January 25, 2006, this court held an evidentiary hearing and issued an order granting Purdy's request (Filing No. 66). On January 26, 2006, Purdy was released to the Federal Public Defender's Office for noncustodial transportation to St. Joseph Villa Hospice in order to visit his grandfather. *See id.* On January 25, 2006, Purdy entered into a Plea Agreement limiting his sentence to 36 months' incarceration (Filing Nos. 68 and 69). As part of the Plea Agreement, Purdy waived his right to appeal (Filing No. 68).

On January 31, 2006, Purdy appeared before this court and entered a plea of guilty to Count I of the Indictment (Filing No. 70, Minute Entry). The Plea Agreement was accepted and a Presentence Investigation Report ("PSI") was prepared. *See id.* On February 3, 2006, Purdy filed a Motion to Review Detention pending sentencing (Filing No. 74). On February 9, 2006, pursuant to the government's Motion to Dismiss, the United States Court of Appeals for the Eighth Circuit dismissed the Interlocutory Appeal (Filing No. 77). On February 13, 2006, this court denied Purdy's Motion to Review Detention pending sentencing (Filing No. 78). However, on March 7, 2006, Purdy was granted temporary release to visit his ill grandfather (Filing No. 83).

On March 10, 2006, Purdy appeared before this court for sentencing (Filing No. 86, Minute Entry). Purdy was sentenced to 36 months' incarceration followed by a one-year term of supervised release (Filing No. 87). On April 14, 2006, Purdy requested a furlough to attend his grandfather's funeral on April 17, 2006, which was denied (Filing Nos. 91 and 92). On October 25, 2006, Purdy filed a Motion to Proceed IFP (Filing No. 95). On December 18, 2006, Purdy timely filed a § 2255 Motion to Vacate arguing that he received ineffective assistance of counsel. On April 23, 2007, Purdy filed a Motion for Judgment on the Pleadings (Filing No. 112). No direct appeal was taken. The court will review below each of Purdy's motions and the arguments therein.

## DISCUSSION

**A.     Motion to Vacate**

The standard under 28 U.S.C. § 2255 allows a prisoner in custody under sentence of a federal court to move the sentencing court to vacate, set aside or correct a sentence. To obtain relief pursuant to 28 U.S.C. § 2255, a federal prisoner must establish: (1) the

sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *See Hill v. United States*, 368 U.S. 424, 426-27 (1962). Although it appears to be broad, 28 U.S.C. § 2255 does not provide a remedy for "all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, 28 U.S.C. § 2255 is intended to redress only "fundamental defect[s] which inherently [result] in a complete miscarriage of justice" and "omission[s] inconsistent with the rudimentary demands of fair procedure." *Hill*, 368 U.S. at 428; *see also United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

Ineffective assistance of counsel claims are analyzed under the framework described in *Strickland v. Washington,* 466 U.S. 668 (1984). The defendant has the burden of proving: 1) deficient performance on behalf of counsel, by demonstrating that his attorney's performance was "below the minimum standards of professional competence" and 2) prejudice, by showing a "reasonable probability that the result of the proceedings would have been different" had his attorney performed "competently." *Alaniz v. United States,* 351 F.3d 365, 367 (8th Cir. 2003). "[T]he proper standard for attorney performance is that of reasonably effective assistance." *See Strickland*, 466 U.S. at 688. So, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688-89.

In the present matter, Purdy makes three allegations of ineffective assistance of counsel. First, Purdy claims he was coerced by his counsel, O'Connor, to consent to the

4

plea agreement. Second, Purdy claims he received ineffectiveness of counsel because O'Connor did not challenge to the propriety of the Indictment. Third, Purdy claims he received ineffectiveness of counsel because O'Connor did not call witnesses and take statements of witnesses who would have benefitted Purdy at the evidentiary hearing on the Motion to Suppress. Purdy also requests this court to appoint counsel to represent him in the proceedings on the current motions and schedule an evidentiary hearing on the issues presented in his § 2255 Motion to Vacate.

   1.   *Assistance of Counsel During the Plea Agreement*

Purdy claims he was coerced by O'Connor to enter into a plea agreement in exchange for being allowed to visit his ill grandfather. Purdy stated that O'Connor repeatedly threatened him with plea offers instead of pursuing trial strategy. *See* Filing No. 100. Additionally, Purdy argues O'Connor exploited his emotional state, informed Purdy the only way to see his dying grandfather was to plead guilty, and told Purdy if he pleaded guilty, Purdy would be released before a ruling could be reached on the government's appeal. *See id.* The government contends the sworn affidavit of O'Connor and the record of this case contradict Purdy's allegations. *See* Filing No. 110.

When a defendant enters a guilty plea upon the advice of counsel, the voluntariness of the plea depends on whether the advice of counsel is "within the range of competence of attorneys in criminal cases." *Strickland*, 466 U.S. at 668 (*quoting McMcann v. Richardson*, 397 U.S. 759, 770 (1970)). Under this standard, the court reviews whether counsel's actions were reasonable. *Strickland*, 466 U.S. at 688. Purdy bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 104 S. Ct. at 2066; *Kellogg v.*

*Scurr*, 741 F.2d 1099, 1101 (8th Cir. 1984); *Bell v. Lockhart*, 741 F.2d 1105, 1106 (8th Cir. 1984). Additionally,

> There are two substantial impediments to making such a showing, however. First, "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690). Second, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of *reasonable professional assistance.*'" *Id. (quoting* Strickland, 466 U.S. at 689); *Davis*, 423 F.3d at 877 ("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance."). If the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

*United States v. Kriens,* 2006 WL 2089947 at *7 (N.D. Iowa, July 25, 2006). Furthermore,

> [w]ithout doubt, to be constitutionally valid, a guilty plea must be knowing, voluntary, and intelligent, and because a guilty plea constitutes a waiver of various constitutional rights, it must be made with sufficient awareness of relevant circumstances and likely consequences. *See*, e. g., *United States v. Martinez-Cruz*, 186 F.3d 1102, 1104 (8th Cir. 1999). The Eighth Circuit Court of Appeals has recognized that a plea agreement may not be knowing and voluntary when it is the result of the ineffective assistance of counsel. *See DeRoo v. United States*, 223 F.3d 919, 923-24 (8th Cir. 2000). At the same time, a defendant's representations during plea-taking, such as those concerning the voluntariness of the plea, carry a strong presumption of verity. *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997).

*Kriens* at *20.

In the Plea Agreement pursuant to Federal Rule of Civil Procedure 11 (c)(1)(C), Purdy certified to the court his plea was "knowing, intelligent and voluntary and made after consultation with defense counsel." *See* Filing No. 68. The transcript of the guilty plea and sentencing proceedings (TR) additionally carry the presumption that Purdy's plea was voluntary with an understanding of the nature of the charge. Purdy stated to the court he "willingly, voluntarily, knowingly and intelligently waive[d] his rights, and that he fully

6

[understood] the consequences of waiving his rights" (TR. 14). Purdy also informed the court that no one used any force, threatened him, or gave him anything to plead guilty other than what was in the Plea Agreement (TR. 15). Purdy stated he was pleading guilty of his own free will because he was "in fact guilty to [the] charge." *Id.* Furthermore, O'Connor stated in a sworn affidavit:

> I never coerced or threatened Mr. Purdy to plead guilty. At no time did I take advantage of Mr. Purdy's emotional state based on his grandfather's illness.
>
> Mr. Purdy's grandfather was suffering with a terminal illness. At no time did I tell Mr. Purdy that the only way for him to have an opportunity to see his grandfather was if he plead guilty.
>
> Over a ten month period of representing Mr. Purdy, I made eight requests to review his detention. Four of these attempts came after his plea. Pursuant to my request, the court continued imposition of sentence, giving Mr. Purdy an opportunity to see his grandfather for the last time. My last request was for a post-sentence furlough to attend his grandfather's funeral while Mr. Purdy was at CCA-Leavenworth, Kansas.
>
> I did tell Mr. Purdy that with or without the DNA evidence, I believe the government was likely to obtain a conviction. I did advise him that he should accept the plea agreement. As with every client, I gave my advice to Mr. Purdy, but told him that I would be more than willing to take his case to trial if he did not accept the advice. As opposed to coercion, I believe that Mr. Purdy saw reality and agreed to take this more than reasonable deal as opposed to the possibility of spending 10 years in jail.
>
> In over 20 years of experience representing more than 2500 felony clients, I believe that there is no attorney who could coerce Anthony Purdy to do anything.

(Filing No. 111-2, Affidavit of Shannon P. O'Connor, ¶¶ 23-27). Additionally, this court discussed with Purdy and O'Connor during the guilty plea and sentencing proceedings the conversations O'Connor had with Purdy regarding the Plea Agreement. *See* TR. 6-7. Moreover, O'Connor stated in his sworn affidavit that:

> Mr. Purdy was a criminal history category VI with an adjusted level of 26. If he had been convicted at trial, his guideline range exceeded the 10 years statutory maximum sentence. Mr. Purdy plead guilty with an 11(c)91)(C) agreement to 36 months and one year of supervised release.
>
> I did advise Mr. Purdy that with good time he would serve a total of 31 months and 11 days. I also informed him that if he were convicted at trial he would probable serve 104 months and 16 days.
>
> In addition, the plea agreement called for a one year term of supervised release, rather than the standard three year term. That was important to Mr. Purdy because he said he would not successfully complete supervised release and did not want to do 'two years on the back end.' If Mr. Purdy's prediction was correct, this agreement saved him another year in jail.

(Filing No. 111-2, Affidavit of Shannon P. O'Connor, ¶¶ 20-22). There is no evidence before the court that shows that O'Connor did not make tactical legal decisions within a reasonable level of professional assistance and within the best interests of his client. The government even stated in its response to Purdy's Motion that:

> [h]ad the government been successful in its interlocutory appeal, the DNA evidence matching Purdy to the firearm would have been introduced at trial and the sentence would have been introduced at trial and the sentence imposed would have been far greater than the 36 month stipulated sentence.

*See* Filing No. 110. Accordingly, Purdy's claim that he received ineffective assistance of counsel with regard to Purdy's plea agreement is denied.

   2.   *Assistance of Counsel in Challenging the Indictment*

Purdy argues in his Motion that O'Connor was ineffective by not challenging the propriety of the Indictment. Specifically, Purdy argues "the evidence presented to the Grand Jury, when in state preliminary hearing the police officer Bruce Rima clearly state for the record, that he did not see the defendant throw anything from the vehicle in question." *See* Filing No. 100. The government relies on *United States v. Costello*, 350 U.S. 359 (1956) for the proposition that Purdy's claim is without merit as there is no basis

for the court to inquire into the sufficiency of the evidence presented to the grand jury. *See* Filing No. 110. The government additionally argues the issue of whether Purdy possessed the firearm thrown out of the vehicle in which Purdy was a passenger is not an element of the offense that would have needed to be proven at trial and is not proper grounds to challenge the indictment. *See id.*

The court finds that the propriety of an indictment is not subject to collateral attack upon a motion to vacate sentence. *See Bent v. United States*, 308 F.2d 585 (8 Cir. 1962), *cert. denied*, 373 U.S. 917 (1963). A motion to vacate a sentence is intended to correct omissions that resulted in unfair procedure. See *Hill*, 368 U.S. at 428. The sufficiency of evidence and errors of law or fact are not appropriate issues asserted in a motion to vacate sentence*. See Burns v. United States*, 229 F.2d 87 (8th Cir. 1956), *cert. denied*, 351 U.S. 910 (1956). Therefore, for these reasons, the court denies Purdy's claim that O'Connor was ineffective in challenging the propriety of the Indictment.

*3.     Assistance of Counsel During the Motion to Suppress Hearing*

Purdy claims that O'Connor was "ineffective by not investigating and calling witnesses to the evidentiary hearing and by taking statements from witnesses who would have benefitted the defense of defendant, and by not calling the person who actually swab[ed] defendant for saliva on October 15, 2004." *See* Filing No. 100. Purdy additionally argues O'Connor was ineffective by "not calling the driver of the vehicle in question and for not initiating a[n] active defense." *See id.* Purdy claims that he "refused to plead guilty" and had to "pressure Attorney O'Connor into proceeding for a Motion to Dismiss on Suppression Grounds" after he called the Federal Public Defender's Office and requested a new attorney. *Id.* The government contends that Purdy's argument is without

9

merit as counsel was successful in suppressing the evidence. *See* Filing No. 110. Furthermore, the government argues that Purdy fails to explain what supplemental information would have been derived from additional witnesses to testify at Purdy's hearing. *Id.*

In O'Connor's affidavit, he states:

> Mr. Hall and I spoke with the driver of the car in which Mr. Purdy was riding when he tossed the weapon from the open driver's side door. She confirmed her statement to the police that between the initiation of the traffic stop and the contact with the police, Mr. Purdy told her that she would have to go back and pick something up after their contact with police.
>
> Mr. Hall and I went to the relevant intersection and took pictures. [Mr.] Hall learned from city officials that the intersection had been changed, including the removal of bushes that were present at the time of Mr. Purdy's arrest. These changes were made prior to this office's representation of Mr. Purdy.
>
> Mr. Hall and I viewed all of the evidence at the Omaha Police Department Property Room. I spoke with all parties involved in the property's chain of custody, copied the relevant envelopes and documents, and provided them to Mr. Purdy. I spoke with witnesses involved in the booking process at the Omaha Police Department, including the person in charge of the booking area, the person who took Mr. Purdy's fingerprints, the lab technician, and arresting officer Rima.
>
> Mr. Purdy testified that Officer Rima took Purdy's buccal swab during the booking process. Mr. Purdy told me that Rima stuck the swab in the plastic bag with the firearm which contaminated the swabs taken to the government's DNA expert.
>
> During the suppression hearing, Officer Rima denied taking any buccal swabs on the day of Mr. Purdy's arrest. None of the witnesses I spoke with indicated that there was a buccal swab taken from Mr. Purdy. None of the chain of custody documents indicated there was a buccal swab taken from Mr. Purdy.
>
> Mr. Purdy told me there was a female officer who witnessed Rima taking the buccal swabs. He recalls seeing her name tag and remembers that the name's first letters were "W-A-L" or "something like that." However, he said he was "woozy" from cocaine.

>       Investigator Hall obtained a copy of all active duty Omaha Police Department officers as of the date of Mr. Purdy's arrest. Mr. Hall also obtained a list of all officers on duty at the time of [Mr.] Purdy's arrest. Mr. Hall spoke with numerous officers, male and female, with names even slightly similar to Mr. Purdy's description. We were not able to locate Mr. Purdy's witness. Against my advice, Mr. Purdy testified at the suppression hearing and said that he was high on cocaine to the extent that police officers had to help him walk to the booking area.
>
>       I spoke with the government's DNA expert. I also contacted numerous DNA experts around the country in the event we wanted to conduct our own DNA test. I obtained a test kit necessary to take appropriate swabs. I concluded that since Mr. Purdy's theory of the defense was that any positive DNA was caused by contamination at the Omaha Police Department, any testing would be unnecessary. Nevertheless, funds were obligated should I later determine that the expert was necessary.
>
>       I had developed a theory of the defense. They were separate theories based on whether the government would be allowed to use the DNA evidence. These theories were discussed with Mr. Purdy on numerous occasions.

(Filing No. 111-2, Affidavit of Shannon P. O'Connor, ¶¶ 5-14). The court finds that Purdy's broad allegations fail to show ineffectiveness of counsel by exhibiting how O'Connor's above legal strategy fell outside the range of "reasonable professional assistance" or prejudiced Purdy in light of the fact O'Connor was ultimately successful. As such, Purdy's claim that O'Connor provided ineffective assistance of counsel during the motion to suppress hearing is without merit and is denied.

   *4. Request for an Evidentiary Hearing and Appointment of Counsel*

   Purdy requests the court to appoint counsel to represent him in his motion to vacate and to schedule an evidentiary hearing. Rule 8(c) of the *Rules Governing § 2255 Proceedings for the United States District Courts* provide that appointment of counsel under the Criminal Justice Act, 18 U.S.C. § 3006A, is permitted "at any stage of the proceeding if justice so requires." The Criminal Justice Act in turn provides that a court

may appoint counsel for any financially eligible person seeking relief under section 2255 when the interests of justice so require. See 18 U.S.C. § 3006A(a)(2); 28 U.S.C. § 2255. In making the determination to appoint counsel, a court must decide whether the *pro se* litigant has presented a nonfrivolous claim and whether the nature of the litigation will make the appointment of counsel of benefit to the litigant and the court. *Battle v. Armontrout*, 902 F.2d 701, 702 (8th Cir. 1990). Several factors should be considered, including the *pro se* litigant's ability to investigate facts and present claims and the complexity of the factual and legal issues. *Id.*

This court does not find that the appointment of counsel would benefit Purdy or the court as Purdy's claims do not appear so complex as to be beyond his ability to present and investigate the issues. The court further finds that Purdy's § 2255 Motion to Vacate does not warrant an evidentiary hearing because the record conclusively shows Purdy is not entitled to relief. *See Engelen v. United States*, 68 F. 3d 238, 240 (8th Cir. 1995).

**B.    Motion for Judgment on the Pleadings**

On April 23, 2007, Purdy filed a Motion for a Judgment on the Pleadings (Filing No. 112) in which he argues: (1) the government failed to rebut any of the allegations presented in the § 2255 petition; and (2) there is no material issue in dispute and the court must accept the record as "true and correct" (Filing No. 112). It appears to the court that Purdy intended this to be a reply to the government's answer (Filing No. 109) to Purdy's § 2255 Motion to Vacate. Because a motion for judgment on the pleadings is procedurally incorrect as applied to the current case, the court will construe this motion as a reply to the government's answer and direct the Clerk of the Court to term Purdy's Motion for Judgment on the Pleadings (Filing No. 112) as a non-motion.

IT IS ORDERED:

1.     Purdy's Motion to Proceed IFP (Filing No. 95) is granted.

2.     Purdy's Motion to Vacate and Dismiss with Prejudice Pursuant to 28 U.S.C. § 2255 (Filing No. 99) is denied.

3.     Purdy's Motion for Judgment on the Pleadings (Filing No. 112) is termed as a non-motion.

4.     The Clerk of Court is directed to mail a copy of this Memorandum and Order to the defendant at his last known address.

DATED this 18th day of December, 2007.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Court Judge